**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**LORENZO C. COLEMAN,**

**Petitioner,**

**v.** **Civil Action No.: 3:23-CV-82 (GROH)**

**H.L. RAY,**

**Respondent.**

# REPORT AND RECOMMENDATION

## I. INTRODUCTION

On March 27, 2023, Petitioner, a federal inmate, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 challenging a prison disciplinary procedure. ECF No. 1.[1]

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be dismissed with prejudice.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Prison Disciplinary Proceedings

The Petitioner was charged with the prohibited offense of fighting with another

[1] All ECF numbers cited herein are from the instant case, 3:23-CV-82, unless otherwise noted.

person on April 11, 2022. ECF Nos. 32-5 at 1, ¶ 9. Incident Report 3616292 was filed, which charged Petitioner with a violation of Prohibited Act Code 201. Id., ¶ 10. The incident report prepared by M. Ryan on April 11, 2022, charged that:

> On 4/11/2022 I [ ] Senior Officer M. Ryan, was assigned as the C-A unit officer. At approximately 9:40PM while performing the 9:30PM count, I observed inmates Coleman, Lorenzo Reg# 38439-083 and [Inmate name redacted] exchanging closed fisted punches one another in the head and upper torso. I proceeded to give the inmates multiple direct orders to stop striking one another and separate, the inmates did not comply with my orders to cease their actions and get on the ground, both inmates did not comply with any of my orders and I dispersed a single two second burst from my MK4 OC to gain control of the inmates with positive effect. At this point the inmates separated and followed further orders to get on the ground. Upon arrival of the Operations Lieutenant and other assisting staff the inmates submitted to hand restraints were removed from the cell, decontaminated, and escorted to the Special Housing Unit.

ECF No. 32-5 at 1, ¶ 11, 12.

M. Brumage delivered the Petitioner a copy of the Incident Report on April 12, 2022. Id., ¶ 14. On April 17, 2022, the Unit Discipline Committee (UDC) recommended referring the charge to the DHO for hearing, and for the imposition of all appropriate sanctions. Id. at 2, ¶¶ 18.B., 18.C., 19, 20, 21. On that same date Petitioner was provided notice of his rights related to the discipline hearing Before the Discipline Hearing Officer. Id. at 3, ¶¶ . Further, the Petitioner was provided a "Notice of Discipline Hearing Before The (DHO) CDFRM." ECF No. 32-6. On the form, which Petitioner signed on April 12, 2022, he initially indicated in black ink that he wanted to have a staff representative at the DHO hearing, and wanted to call witnesses. Id. However, an undated addendum in blue ink reads, "I waive the appearance and testimony of staff rep[resentative]." Id. Next to that addendum, the Petitioner's signature appears in the same blue ink. Id.

The Discipline Hearing was held on May 9, 2022, before DHO D. Huff, at which time Petitioner waived his right to have a staff representative assist him at the hearing, which was documented by the DHO. ECF Nos. 32-8 at 1, ¶¶ II.A., III.B; 32-8 at 5. The DHO report documented the following:

> You presented hand written statements as documentary evidence. You requested inmate [name redacted] inmate [name redacted] inmate [name redacted] inmate [name redacted]and inmate [name redacted] as witnesses and they provided statements in regards to the incident. You waived your staff representative at the time of the hearing. You did not request review of video evidence at any level of the discipline process. You indicated to the DHO you were ready to proceed with the hearing.

ECF No. 32-8 at 1, ¶ III.B. The DHO questioned the Petitioner as to the charges against him:

> The DHO read aloud section 11 of the incident report and asked if it was true. You provided the following statement: "I was not fighting. I was blocking his punches to keep him from hitting me. He was going thru a situation and I was the only one talking to him. He said something was going on and asked if I had told someone to do something to him. He asked if I told people he was "hot". They were doing count Mr. Ryan was at 234, turned around swinging. He hit me in the head and I grabbed him by the elbows. Knowing he had things going on, I had done made the decision, I was not going to fight back."

Id. at 1 – 2, ¶ III.B.

Petitioner did not waive his right to call witnesses, and submitted written statements from five fellow inmates. Id. at 2, ¶ III.C. The DHO Report notes that the Petitioner's witnesses were not called to provide live testimony "in order to maintain the health, safety, and security of the institution, however they provided [ ] written statements in regards to the incident." Id. at ¶ III.C.2. The DHO included the text of each of the five

witness statements in his report:

> [Redacted Inmate 1] I did not see the fight, we was locked down during count and far as his mental state, I'm not sure of it but he was talking crazy for weeks.
>
> [Redacted Inmate 2] We were locked in when the fight happened but Purcell was going thru something thinking someone was writing his girlfriend.
>
> [Redacted Inmate 3] Coleman is a good guy never been into anything, stay to his self. Purcell is going through mental things that he needs help for like bad.
>
> [Redacted Inmate 4] He was tripping on his girlfriend. He was losing his mind. I kept telling him that he needs to see the psych people. He was really bad. I think he needs help. As far as the fight I was locked down but I think he just lost it. He was battling with his own self.
>
> [Redacted Inmate 5] Well, I can't speak on the fight, but I can tell you this much about Purcell, he is a real nut job and he needs real mental health. Because in his mind he was thinking we all was talking to his girl on the email and phone. I really wish you guys could get him some help because someone is going to really hurt him in this place the way he is acting and the things he is going thru.

ECF No. 32-8 at 2, ¶ III.C.2.

Following the hearing, the DHO found that Petitioner committed the prohibited act of Fighting with Another Person, in violation of Code 201. ECF No. 32-8 at 3. The DHO wrote in his report that "[i]n addition to the Incident Report and Investigation, the DHO considered the following documents: Incident Report - Staff Memorandums -- (BOP-IRMEM) Incident Report - Photographs -- (BOP-IRPHO) Incident Report - Medical Assessments -- (BOP-IRMEDA)." Id. Later in his description of his findings, the DHO noted that he also considered the statements of the Petitioner's witnesses, but they had no firsthand knowledge of the fight. Id. at 4, ¶ V. Further, the DHO wrote:

> In making this decision the DHO gave the greater weight of evidence to the reporting officer['s] written account than to your claim that you were not fighting, you were blocking his punches to keep him from hitting you, he was going through some things, so you made a decision not to fight back. This decision was based upon the reporting officer's observations that you were observed exchanging closed fist punches with inmate Purcell which identifies you both as mutual participants in the hostile physical encounter. Your witnesses [ ] were not called as [ ] witnesses in order to maintain the health, safety, and security of the institution, however they provided a written statements in regards to the incident.
>
> Your contention that you did not fight back was considered but insufficient to excuse you from the offense. While it may be true that inmate [redacted] initiated the hostile physical encounter however your decision to respond with an offensive response identified you as a mutual participant in the hostile physical encounter. Self-defense is an action by which a person protects himself from any bodily harm arising out of an attack or an assault and is accepted on a case-by-case basis. An acceptable case for self-defense would have been that you chose to flee the area, or took no offensive stance or delivered no offensive strike. However in this instance, you were observed exchanging closed fist punches with inmate [redacted] which identifies you both as mutual participants in the hostile physical encounter. Accordingly, your denial did not outweigh the reporting officer['s] written account and it is the finding of the DHO that you committed the prohibited act as charged.
>
> The DHO considered your written statement addressed to Case manager Holler, in which you claimed inmate [redacted] was having mental problems, which you felt led to the altercation, in addition to the denial highlighted in the verbal argument of your defense. If in fact, inmate [redacted] was having mental health issues as you claimed this information should have been reported to staff immediately. Your explanation was viewed as nothing more than an attempt to distance yourself from any wrong doing and did not outweigh the reporting officer['s] written account[.]
>
> The DHO considered the statements of your witnesses inmates and [ ] finds they have no firsthand knowledge of the fight.

> Therefore, based on the evidence outlined above, the DHO finds the greater weight of evidence to support that you committed the prohibited act of Fighting with another person, code 201.

ECF No. 32-8 at 3 – 4, ¶ V. As a result of his conviction, Petitioner was sanctioned to 27 days loss of good conduct time, 10 days of disciplinary segregation, and 120 days of loss of commissary privileges. Id. at 5, ¶ VI.

**B. Instant § 2241 Petition**

The Petitioner asserts two grounds for relief: (1) that the Discipline Hearing Officer (DHO) failed to consider key evidence including photographs, eyewitness testimony, and failed to remain neutral and detached [ECF No. 1 at 5]; and (2) the Petitioner was denied due process during the DHO hearing because he was not allowed access to his requested staff representative [Id. at 6].

The Petitioner claims that he exhausted the grievance procedure, but states that his claims were denied. Id. at 7. As relief, the Petitioner requests that his good time credits be restored, and that the incident report be expunged from his inmate file. Id. at 8.

Respondent filed a motion to dismiss or for summary judgment, with a memorandum and exhibits in support thereof, on August 30, 2023. ECF Nos. 32, 32-1 through 32-14, 35. Respondent argues that the Petitioner's due process rights were not violated during his disciplinary proceedings because he received all the due process to which he is entitled under Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Specifically, the following actions were taken to provide the Petitioner with the required due process:

(1) the incident report was delivered to Petitioner on April 12, 2022, more than 24 hours in advance of the Discipline Hearing which occurred on May 9, 2022 [ECF No. 32-1 at 8];

(2) the Petitioner received the DHO report on August 3, 2022, which detailed the evidence relied upon and the reasons for taking any disciplinary action [Id. at 7];

(3) the Petitioner received a notice of and a copy of his rights for the disciplinary hearing before the DHO, and was advised of the right the Petitioner was offered an opportunity to call witnesses, present documentary evidence, and request a staff member to be present, and although Petitioner presented witness statements, at the DHO hearing, he declined a staff member's presence [Id. at 8];

(4) that the Petitioner is not illiterate and the disciplinary proceedings did not involve complex issues [Id. at 10 – 11]; and

(5) the Petitioner was provided an impartial DHO who based his decision solely on the evidence presented at the hearing [Id. at 8].

Further, the Respondent argues that the Petitioner is not entitled to relief because the DHO's opinion was founded upon "some" evidence in finding the Petitioner committed the violation as charged. Id. at 11 – 12.

On October 18, 2023, the Petitioner filed a response which asserted that: (1) he did not receive all due process as mandated by Wolff v. McDonnell [ECF No. 43 at 1 – 2]; (2) that his witnesses were not permitted to attend and testify at the DHO hearing, and that the DHO failed to identify any specific safety or correctional concerns which justified denying the Petitioner access to his witnesses [Id. at 2 – 3]; (3) he was denied the right to have staff representation during his DHO hearing, and that he never waived his right to have staff representation at the hearing [Id. at 3 – 6]; (4) his decision to proceed with

the DHO hearing without a staff representative was involuntary, based on misrepresentations by the DHO that if the Petitioner wanted a staff representative, the hearing would be delayed [Id. at 6 – 7]; (5) the DHO did not consider important documentary evidence, including both medical assessments [Id. at 7 – 8]; (6) the DHO did not remain neutral and detached and failed to consider the greater weight of evidence in the Petitioner's favor [Id. at 9 – 11].

The Respondent did not file a reply.

## III. STANDARD OF REVIEW

### A. Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Cases in the U.S. District Courts.

### B. Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable

merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[2] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

**C. Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241**

A petition filed pursuant to § 2241 is the appropriate method to challenge a due process violation as part of a prison disciplinary proceeding. Burgess v. Dunbar, 628 Fed. Appx. 175 (4th Cir. 2015).

**D. Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

[2] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

**E. Motions for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a

genuine issue of material fact." 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins.

Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV. ANALYSIS

It appears to the Court that the Petitioner's claims are without merit. Petitioner contends that his due process rights were violated during the prison disciplinary process, including the alleged denial of a staff representative, and denial of live witness testimony. ECF No. 1 at 5 – 6.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

> 1. giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;
>
> 2. providing the prisoner a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action;
>
> 3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;
>
> 4. if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case, permitting the prisoner the aid of

a fellow prisoner, or if that is forbidden, aid from staff or a sufficiently competent inmate designated by staff; and

5. providing impartial factfinders.

Id. at 564-566, 570-571.

In the present case, the Court finds that Petitioner was provided all the due process required for a disciplinary proceeding for several reasons. First, Petitioner received notice of the incident report on April 12, 2022, 28 days before the May 9, 2022, DHO hearing. ECF No. 32-6. Second, the July 8, 2022, DHO Report includes several paragraphs which explain the specific evidence relied on to support the findings, including the incident report itself, the statements of Petitioner, and his witnesses, medical assessments, staff memoranda and photographs. ECF No. 32-8 at 3. Third, Petitioner was offered the opportunity to present witness testimony, which he did through written statements of five witnesses, none of whom had direct knowledge of the fight. Id. at 2. The Petitioner also made a statement in his own defense. Id. Fourth, Petitioner is not illiterate, nor did the complexity of the issue make it unlikely that Petitioner could collect and present the evidence necessary for an adequate comprehension of the case; thus, Petitioner did not require the aid of a fellow prisoner or staff. Nevertheless, Petitioner was offered, and initially requested staff aid, but later at the hearing before the DHO, declined staff aid. The Petitioner both signed a document which noted his waiver, and the DHO separately documented that waiver. ECF Nos. 32-6; 32-8 at 1. Finally, the DHO was an impartial factfinder. Disciplinary Hearing Officer D. Huff was not the individual who authored the Incident Report. ECF No. 32-8 at 5. Rather, M. Ryan reported the incident, and M. Brumage wrote the Incident Report. ECF No. 32-5.

The results of a prison disciplinary proceeding will be upheld so long as there is "some evidentiary basis" to support the decision. Superintendent v. Hill, 472 U.S. 445, 455. (1985) ("due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Id. at 457). Determining whether there is some evidentiary basis to support a decision:

> Does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . .

Id. at 455 - 56.

In this case, the Disciplinary Hearing Officer found Petitioner guilty of Fighting with Another Person, in violation of Prohibited Acts Code § 201. The reasons listed by the DHO for his finding, included the statement of the reporting staff member in the Incident Report, medical assessments, and photographs. ECF No. 32-8 at 3 – 4. The DHO also considered the statements of Petitioner, and his witnesses but found the greater weight of the evidence supported Petitioner's conviction. Id.

This Court finds that the evidentiary requirement standard enunciated in Superintendent v. Hill, supra, was met. Therefore, the undersigned finds that the Disciplinary Hearing Officer's decision is supported by some evidence and that the Petition should be denied.

As to the five contentions raised by the Petitioner in his response to the motion to dismiss, those contentions are not persuasive. First, the Petitioner asserts that he was denied all due process mandated by Wolff v. McDonnell; however, as above noted, the Petitioner received the mandated due process in his disciplinary proceedings.

Second, the Petitioner complains that his witnesses were not permitted to attend and testify at the DHO hearing. However, the written statements and the DHO's evaluation of those statements show that none of the Petitioner's witnesses had any personal knowledge of the fight, and were, thus irrelevant. ECF No. 32-8 at 4.

Petitioner's third claim is that the DHO failed to identify any specific safety or correctional concerns which justified denying the Petitioner access to his witnesses. While the overarching concern of institutional safety is sufficient to justify not having inmates personally testify at DHO hearings, more importantly here, none of the Petitioner's witnesses had any personal knowledge of the incident report and thus their testimony was irrelevant. Nonetheless, the DHO "considered the statements of your witnesses inmates and [ ] finds they have no firsthand knowledge of the fight." ECF No. 32-8 at 4.

Fourth, the Petitioner asserts that he was denied the right to have staff representation during his DHO hearing, and that he never waived his right to have staff representation at the hearing.[3] Contrary to his assertion, a signed waiver of staff

---

[3] The only fact which is arguably in dispute is the Petitioner's claim that he was denied staff representation at the DHO hearing. However, that claim is contradicted by the Petitioner himself in his response to the motion to dismiss or for summary judgment. There the Petitioner contends that his decision to proceed with the DHO hearing without a staff representative was involuntary. ECF No. 43 at 6. The Petitioner asserts that his decision "was done in response to misrepresentations by DHO Huff threatening a delay of his transfer." Id. At least twice in the Petitioner's response he refers to "his decision" to proceed with his hearing. That decision was documented by the Petitioner's own signature on the waiver from [ECF No. 32-6], and by the DHO in his report [ECF No. 32-8 at 1].

Further, in his response to the motion to dismiss or for summary judgment, the Petitioner asserts that "his is illiterate to the DHO process," and reliant upon fellow prisoners in his litigation and the administrative remedy process. Id. at 5. However, "illiteracy" to a *process* is not the standard announced in Wolff. Rather, Wolff held that:

> Where an illiterate inmate is involved, however, or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff. We need not pursue the matter further here, however, for there is no claim that the named respondent, McDonnell, is within the class of inmates entitled to advice or help from others in the course

representation was executed after the initial request to have staff representation. ECF No. 32-6. Further, the DHO documented in his report that the Petitioner waived his right to staff representation at the hearing on May 9, 2022. ECF No. 32-8 at 1. The Petitioner argues that his decision to proceed with the DHO hearing without a staff representative was involuntary, based on "misrepresentations by the DHO" that if the Petitioner wanted a staff representative, the hearing would be delayed. Regardless of his motivation, this demonstrated that the Petitioner did decide to proceed without a staff representative. Moreover, Wolff does not mandate that an inmate must have a staff representative. Rather, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case, an inmate may receive assistance from a fellow prisoner, or if that is forbidden, aid from staff or a sufficiently competent inmate designated by staff. The Petitioner is not illiterate. Further, the issue presented here, whether the Petitioner engaged in a physical fight with another person, was not complex, and did not necessitate aid from a fellow inmate or staff.

Finally, the Petitioner asserts that the DHO did not consider important documentary evidence, including both medical assessments, did not remain neutral and detached and failed to consider the greater weight of evidence in the Petitioner's favor. However, the DHO report refutes each of these contentions. The DHO report lists that the DHO considered "medical assessment**s**". ECF No. 32-8 at 3 (emphasis added). Further,

---

of a prison disciplinary hearing.

Wolff v. McDonnell, 418 U.S. 539, 570, 94 S. Ct. 2963, 2982, 41 L. Ed. 2d 935 (1974). Under that standard, this Court, like the Wolff court, need not pursue the matter further because there is no claim that the Petitioner is illiterate, or facing a complex issue which would make it unlikely that the Petitioner would be able to collect and present necessary evidence for his case. Accordingly, this claim does not rise to the level of a genuine issue of material fact sufficient to defeat the Respondent's motion for summary judgment.

as noted above, the DHO was a neutral hearing officer, being a person other than the individual who wrote the Incident Report. Finally, the DHO report documents that, ". . . the DHO finds the greater weight of evidence to support that you committed the prohibited act of [f]ighting with another person, code 201." Id. at 4.

For all of the above reasons, the undersigned finds that the Disciplinary Hearing Officer's decision is supported by some evidence, the Petitioner has not demonstrated a violation of his due process rights under the Wolff v. McDonnell standard, and that the Petition should be denied.

## V. RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED.** It is further **RECOMMENDED** that Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment [ECF No. 32] be **GRANTED** and that the § 2241 proceeding be **DISMISSED WITH PREJUDICE**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the**

**Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:** October 26, 2023

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE